# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CARIE CROWLEY,**

        **Plaintiff,**

**vs.**                            **Case No.: 8:14-cv-1796-T-30TBM**

**OSPREY EXHIBITS AND GRAPHICS, INC.,
a Florida corporation; and RONALD
FASSLER, an individual,**

        **Defendants.**

_____/

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER

Defendants, by and through their undersigned counsel, hereby oppose Plaintiff's Motion for a Protective Order for the following reasons.

## I.    INTRODUCTION

In this action, Plaintiff claims that she worked for Defendants and that Defendants failed to pay her minimum wage and overtime. Defendants dispute that Plaintiff worked enough hours to establish a minimum wage violation or failure to pay overtime. Plaintiff worked from home during portions of her employment with Defendant.  Plaintiff worked in Defendants' business office for a portion of her employment.

Plaintiff was employed by Defendants from mid-March 2013 through March 27, 2014 (Doc. 11, p. 2).  Plaintiff primarily worked from home and did not have a regular schedule. Id.  In her Court Ordered Answers to Interrogatories, Plaintiff described four distinct periods of employment:

- March 2013 - May 25, 2013 (Period 1)

- May 26, 2013 - September 30, 2013 (Period 2)

- October 1, 2013 - January 5, 2014 (Period 3)

- January 6, 2014 - March 27, 2014 (Period 4)

(Doc. 11, pp. 2-3).

Plaintiff estimates her hours worked and the potential value of the alleged FLSA minimum wage and/or overtime violations for each period. For periods 1 and 2, Plaintiff claims she worked 36 hours per week.  For periods 3 and 4, Plaintiff claims she worked 53 hours per week.

On November 11, 2013, Plaintiff sent an email to Defendant stating, in her own words, "I just can't continue to work 40 hours per week for $175." (Doc. 11, p.8).[1]  Plaintiff added, "I'm going to have to dedicate time to searching." Id.  So one would think that Plaintiff worked less than 40 hours after November 11, 2013 if she was looking for another job.

Effective January 6, 2014, Defendant placed Plaintiff on a written contract of employment which permitted Plaintiff to work a maximum of 24 hours of work per week in the office at a rate of pay of $16.67 per hour (Doc. 11, p. 10).  The Agreement established mandatory Monday morning meetings (Doc. 11, p. 10).  Sales commissions were paid at 20 percent of the net profit for Item sales and 30 percent of net profit for Event sales. After entering into the Employment, Plaintiff was obligated to fill out time sheets to receive compensation of $16.67 per hour for office work (Doc. 18-2).  After Plaintiff went under a formal contract, Plaintiff needed prior approval to work more than 24 hours per week. (Doc.

---

[1]Plaintiff's Interrogatory Answers also contradict her November 11, 2013 email in admitting she was paid $400 per week on and after October 1, 2013 (Doc 11, p.3).

11, p. 10).  Plaintiff also needed prior approval to miss a mandatory Morning meeting (Doc. 11, p. 10).

## II.   DEFENDANTS' HAVE THE RIGHT TO IMPEACH PLAINTIFF'S ESTIMATED HOURS WORKED WITH PROOF OF HER LACK OF MOTIVATION OR LACK OF ABILITY TO WORK

Under the FLSA, where an employer keeps incomplete records an employee can carry her burden if she proves that she has in fact performed work for which she was improperly compensated and ifs he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–88 (1946). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." Id.  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id.

Defendants filed answers to Court Ordered Interrogatories which show that Plaintiff worked whenever she wanted and missed countless days of work (including in the office for which she would have been paid $16.67 per hour) due to alleged medical conditions she asserted for herself, her boyfriend, her mother and her dog (See Doc. 18-1). Defendant either want to show that Plaintiff is a liar and that her illnesses were fabricated or that such illnesses explain her need for limited part-time employment.  By repeatedly calling in sick, Plaintiff has made her actual health a relevant issue in the case as it pertains to judging Plaintiff's credibility.

For example, the evidence could show Plaintiff misused medication or that Plaintiff was never prescribed medication.  The evidence may show that Plaintiff took non-prescribed substances.  Plaintiff cannot seek a protective order to fortify and preclude

questioning her about her health and conditions which may assist Defendants to attack Plaintiff's credibility and/or motivation when she claims she worked 53 hours per week even after being told she needed advance permission to be paid more than 24 hours per week.

In <u>United States v. Lindstrom</u>, 698 F.2d 1154 (11th Cir. 1983), the court stated:

> Certain forms of mental disorder have high probative value on the issue of credibility. Although the debate over the proper legal role of mental health professionals continues to rage, even those who would limit the availability of psychiatric evidence acknowledge that many types of "emotional or mental defect may materially affect the accuracy of testimony; a conservative list of such defects would have to include the psychoses, most or all of the neuroses, defects in the structure of the nervous system, mental deficiency, alcoholism, drug addiction and psychopathic personality." Juviler, Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, 48 Cal. L. Rev. 648, 648 (1960). Mental illness may tend to produce bias in a witness' testimony. A psychotic's veracity may be impaired by lack of capacity to observe, correlate or recollect actual events. A paranoid person may interpret a reality skewed by suspicions, antipathies or fantasies. A schizophrenic may have difficulty distinguishing fact from fantasy and may have his memory distorted by delusions, hallucinations and paranoid thinking. A paranoid schizophrenic, though he may appear normal and his judgment on matters outside his delusional system may remain intact, may harbor delusions of grandeur or persecution that grossly distort his reactions to events.

<u>Id.</u> at 1160.  The <u>Lindstrom</u> court further remarked: "Whether called "collateral" or not, the issue of a witness' credibility is committed to the providence of the jury. Although the use of psychiatric evidence 'does not fall within the traditional pattern of impeachment, the law should be flexible enough to make use of new resources.' Weihofen, supra at 68. By this late date, use of this kind of evidence can hardly be termed 'new.'" 698 F.2d at 1161.

A witness who suffers from a mental illness or other psychological issues may "misperceive and misinterpret the words and actions of others." Lindstrom, 698 F.2d at 1166. Put another way, such a witness may be lacking in his or her "ability to comprehend, know, and correctly related the truth." United States v. Partin, 493 F.2d 750, 762 (5th Cir.1974), cert. denied, 434 U.S. 803 (1977)). The Eleventh Circuit has explicitly stated that "[a] desire to spare a witness embarrassment which disclosure of medical records might entail is insufficient justification for withholding such records from criminal defendants on trial for their liberty." Lindstrom, 698 F.2d at 1167.

A civil case is a similar search for truth.  Plaintiff's medical and.or mental conditions cannot be shielded from inquiry.  Plaintiff's use of legal or other substances can be probed under Rule 26.  Plaintiff's desire for a shield is inconsistent with a search for the truth. Defendants believe Plaintiff may suffer from one or more personality disorders and such evidence cannot be shielded from discovery.

**III.    MEDICAL EVIDENCE IS RELEVANT AND NOT PRIVILEGED**

Rule 26 permits "discovery regarding any non-privileged matter that is relevant to any party's claim or defense ... [or, upon court order,] any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The term "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "[T]he general rule is that federal common law governs privileges in federal question cases." State Farm Mut. Auto. Ins. Co. v. Kugler, 840 F.Supp.2d 1323, 1329 (S.D. Fla. 2011).

HIPPA does not create a privilege. Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 925–26 (7th Cir. 2004).   The Federal Rules of Evidence do not explicitly

recognize a doctor-patient privilege and there is no such privilege under federal common law. See Whalen v. Roe, 429 U.S. 589, 602, n. 28 (1977) ("physician-patient evidentiary privilege is unknown to the common law"); Ortiz–Carballo v. Ellspermann, 2009 WL 961131, at *3 (M.D. Fla. 2009) (granting defendant's Motion to Compel medical records from plaintiffs internal medicine doctor and noting that there is no doctor-patient privilege under federal law and that the requested records were relevant to the case).

As the party seeking a protective order, Plaintiff bears the burden of showing good cause for such protection, and she must meet this burden with a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." See United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978). Yet, that is all Plaintiff can muster.

By voluntarily disclosing medical excuses for being absent from work, Plaintiff cannot preempt examination of the truth of the excuses in an effort to prevent her credibility from being assailed if the excuses were untruthful or fabricated.  If the excuses were truthful, Defendants are entitled to know how such conditions limited Plaintiff's ability to work and the duration of such limitations.

When a litigant files a case, she puts her credibility at issue, and she waives her right to object to the discovery of medical records which can impeach such credibility. See Sanchez v. McCray, 349 Fed. Appx. 479, 483 (11th Cir. 2009) ("district court properly overruled [the plaintiff's] objection to the admission of his medical records.... [The Plaintiff] put his medical status at issue, and thus his medical records were admissible as evidence").

WHEREFORE, Defendants ask that Plaintiff be directed to answer any all questions that bear on her medical conditions and drug use.  A protective order should be entered

ensuring that the deposition not be released to third parties absent court approval.  But the search for truth should not be impeded as proposed by Plaintiff's Motion.

Respectfully submitted,

BERMAN LAW FIRM, P.A

By:    *Craig L. Berman*
Craig L. Berman, Esquire
Fla. Bar No. 068977
111 Second Avenue N.E.
Suite 706
St. Petersburg, FL 33701
Phone: (727) 550-8989
Fax: (727) 894-6251
craig@bermanlawpa.com

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 25, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*Craig L. Berman*
Attorney